Kimberly A. OBERT, Petitioner,

v.

**The COLORADO DEPARTMENT OF SOCIAL SERVICES, Respondent.**

No. 87SC342.

Supreme Court of Colorado.

Dec. 19, 1988.

As Modified on Denial of Rehearings Jan. 17, 1989.

Bernard A. Poskus, Legal Aid Society of Metropolitan Denver, Inc., Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Wade Livingston, First Asst. Atty. Gen., Vivianne Chaumont Oates, Asst. Atty. Gen., Denver, for respondent.

ERICKSON, Justice.

We granted certiorari to review *Brown v. Department of Social Services*, 746 P.2d 1379 (Colo.App.1987).[1] The issue before us

---

1. The court of appeals consolidated the judg- ments of the district court in two cases raising

is whether the recipient of Aid to Families with Dependent Children (AFDC) benefits can seek to correct an "underpayment" of past benefits after the time has expired for filing an administrative appeal. The court of appeals concluded that the failure of petitioner to perfect a timely appeal of the declaration of benefits precluded review on appeal. However, correction of an underpayment may be made administratively beyond the time permitted for appellate review. Accordingly, we remand to the court of appeals with directions to return the case to the district court for remand to the state hearing officer for determination of whether there was an "underpayment" and for further proceedings consistent with County Letter 84–349–A and 9 Code Colo. Reg. 2503–1, § 3.800.5 (1988) (Correction of Underpayments).

## I.

AFDC is a cooperative federal and state program of financial assistance to needy children and their families. *See* Title IV–A of the Social Security Act, 42 U.S.C. §§ 601 to 616 (1983 & Supp.1988). *See generally Shea v. Vialpando*, 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120 (1974). The federal program reimburses each participating state for a percentage of the funds it expends. 42 U.S.C. § 602 (1983 & Supp.1988). In return, states that elect to participate in the program must administer their assistance programs pursuant to state plans that conform to applicable federal statutes and regulations. The federal reg-

ulations are promulgated by the United States Department of Health and Human Services (HHS). *Id.; see also Lukhard v. Reed*, 481 U.S. 368, 107 S.Ct. 1807, 1810, 95 L.Ed.2d 328 (1987); *Heckler v. Turner*, 470 U.S. 184, 189, 105 S.Ct. 1138, 1141, 84 L.Ed. 2d 138 (1985). Colorado has elected to participate in the AFDC program by enacting sections 26–2–101 to –132, 11 C.R.S. (1982 & 1988 Supp.). The Colorado Department of Social Services (Colorado Department) has promulgated regulations implementing the program. *See* 9 Code Colo.Reg. 2503–1, §§ 3.600 to 3.685 (1988). The Colorado Department oversees and administers the program, with the assistance of the county departments of social services (County Department). *See* §§ 26–2–104 to –108, 11 C.R.S. (1982 & 1988 Supp.).

The petitioner, Kimberly A. Obert, and her son, began receiving AFDC benefits in July 1982.[2] On December 2, 1982, the County Department sent Obert an "Advance Notice of Denial, Reduction or Termination of Assistance" form letter that advised Obert of the termination of her benefits, effective January 1, 1983. The letter stated that "[y]ou [Obert] are ineligible for assistance because you have failed to provide a copy of [your son's] Social Security card." The notice also informed Obert of her right to a hearing to contest the County Department's decision, and reserved a specific time and place for the hearing.[3] Obert failed to appear at the hearing on December 13, 1982.

identical issues, *Brown v. Department of Social Services*, No. 85CA1781, and *Obert v. Department of Social Services*, No. 85CA1777, and published its opinion under the caption *"Brown v. Department of Social Services."* Brown did not petition for certiorari, but Obert did.

2. The total award to Obert in July 1982 was seventy-four percent less than it would have been if the County Department had not determined that Obert's father provided her with living quarters and food. Obert claims that she was making payments to her father when she could for room and board and therefore the initial award was erroneous and an "underpayment."

3. The notice sent to Obert was a standard form used by the County Department to inform applicants and recipients of the denial, reduction,

termination or recovery of AFDC benefits. Following an explanation of the reasons for the County Department's action, the notice provision of the form states, in part:

> II. You have the right to a hearing before the county department to contest this decision. The hearing has been set on the date shown below in section III. You may be able to get a one-day extension of this scheduled hearing date by calling your technician. Your call or written request for extension, questions, request for further information, or other communication with your technician about this proposed action must be received two days before the proposed effective action date listed in section I–B.
>
> If you disagree with the above-described proposed action and want to appeal, i.e. have a county hearing, you must (1) call your eligi-

Instead of exercising her rights to administrative review, Obert reapplied for AFDC benefits in February 1983. She again admitted that her father provided her with food and shelter. On March 17, 1983, the County Department mailed Obert another "Advance Notice of Denial, Reduction or Termination of Assistance" and advised Obert that she was not eligible for assistance because of "excess resources."[4] The form letter again set out Obert's right to review and designated a hearing date of March 28, 1983.[5] Obert failed to appear at the county hearing.

Obert filed a request for a hearing before the Colorado Department approximately twenty-two months after the termination of her benefits in December 1982. She asserted three claims: (1) the amount of the AFDC benefits and payments she received between July and December 1982 was less than the amount to which she was entitled; (2) that she was wrongfully terminated from AFDC benefits in December 1982 for failure to furnish her son's social security card; and (3) that she was wrongfully denied AFDC benefits when she reapplied in March 1983 because the County Department erroneously determined that she was ineligible for aid. A hearing was conducted before the state hearing officer on January 8, 1985. The hearing officer held that based on Obert's own admissions, Obert had actual notice of both the termination of her AFDC benefits and the denial of her reapplication for assistance. The officer concluded that Obert's right to appeal was foreclosed by her failure to appeal the adverse action within the ninety-day limitation pursuant to 9 Code Colo.Reg. 2503–1, § 3.850.11 (1981).[6]

bility technician to say that you want to have such a hearing, and (2) you must come to the place described in section III below on the date and at the time shown. If you do not call or if you ask for but do not come to the county hearing on the date and time shown or the next day if an extension is granted, you will be considered as having abandoned the county-level appeal and the proposed action will be taken by the county department. You may request and have your county hearing before the effective date shown in section I above.

4. The two primary elements in determining a family's need for financial assistance are the resources available to the "assistance unit" [family] and the income available to the "assistance unit." *See* Colorado Department of Social Services Staff Manual Volume 3, Income Maintenance § 3.660.1, codified at 9 Code Colo.Reg. 2503–1, § 3.660.1 (1988).

5. At the hearing in January 1985, Obert testified that she was unaware of the termination of her AFDC benefits because she did not receive the first notice. She stated that she discovered the termination only when a technician telephoned her in January 1983, to inquire about her Medicaid benefits. However, Obert did not dispute receiving the second notice denying her reapplication for benefits. The issue of whether or not Obert received adequate notice of the termination of her AFDC benefits is not before us.

6. Section 3.850.11 provides:
An applicant for or a recipient of assistance payments who is dissatisfied with a county department action or the results of the county evidentiary hearing ... or failure to act concerning benefits may appeal to the State Department for a fair hearing before an independent State Hearing Officer. This will be a full evidentiary hearing of all relevant and pertinent facts to review the decision of the county department. The time limitations for submitting such an appeal are:
a. when the individual elects to avail himself of a county evidentiary hearing but is dissatisfied with that decision, the appeal must be submitted in writing (mailed[ ]) within 15 days of the date the county evidentiary hearing decision was mailed;
b. when the individual elects not to avail himself of a county evidentiary hearing but wishes to appeal directly to the State, a written request therefor must be submitted (mailed) not later than 26 days from the date prior notice of the proposed action was mailed to the person;
c. appeals must be mailed to the Office of Appeals, Colorado Department of Social Services.
An extension to the time limitations provided above may be granted by the State Hearing Officer when the individual is unable to submit a request due to "good cause"; i.e., specifically, a sudden severe illness, an accident, or other particular occurrence, which, by its emergent nature and drastic effect, prevented such appeal submission within the time periods prescribed. The burden of proof to show "good cause" shall be upon the recipient or applicant. *Such extensions shall not exceed 90 days in total time from the date of original prior notice of the action under appeal.* The Hearing Officer shall enter the reason justifying extension in the appeal record and decision.
(Emphasis added.)

The hearing officer held that he did not have jurisdiction to consider the appeal on its merits and could not correct the underpayments and termination of AFDC and Medicaid assistance to Obert, and dismissed Obert's appeal.

Obert sought judicial review of the hearing officer's decision in the district court pursuant to section 24–4–106, 10A C.R.S. (1988). The district court found that there may be facts in the administrative record which support Obert's claims, but concluded that the hearing officer correctly held that he lacked jurisdiction to rule on the merits of Obert's appeal. Accordingly, the district court entered an order affirming the decision of the hearing officer. The court of appeals concluded that the "fact of underpayment must be *established* before it can be corrected" and held that no provision of law requires further hearings when a recipient fails to appeal an erroneous agency action within the time mandated by law. *Brown*, 746 P.2d 1379, 1381. Since Obert had an opportunity to appeal within ninety days, and failed to appeal, she lost her right to further appellate review. *Brown*, 746 P.2d 1379, 1381; *see* 45 C.F.R. § 205.10(a)(5)(iii) (1987); 9 Code Colo.Reg. 2503–1, § 3.850.11 (1981). She could not appeal by merely asserting a claim of underpayment of benefits after the ninety-day period expired. *Brown*, 746 P.2d 1379, 1381. We conclude that since Obert's first claim was for underpayment of AFDC benefits the error could be corrected administratively in accordance with County Letter 84–349–A and 9 Code Colo.Reg. 2503–1, § 3.800.5 (1988) (Correction of Underpayments).[7] Section 3.800.5—Correction of Underpayments—provides in pertinent part:

Accordingly, by the Colorado Department's regulations, a request for an administrative appeal must be made no later than ninety days from the date of notice of the contested action.

7. County Letter 84–349–A issued by the Colorado Department to the county departments states in pertinent part:

"Current policy as outlined in Sections 3.800.5 through 3.800.54 requires prompt action to correct an underpayment error. Section 3.800.53 specifies time frames for State reimbursement of retroactive payments and states

The county department must take prompt action to correct underpayments to current recipients and those who would be current recipients if the error causing the underpayment had not occurred. Underpayment means a financial assistance payment(s) received by or for an assistance unit which is less than the amount for which the assistance unit was eligible, or failure to issue a financial assistance payment to an eligible assistance unit if such payment should have been issued. When the possibility of an underpayment is discovered or brought to the attention of the county department, the income maintenance staff must:

a. record the date of the discovery;

b. investigate and verify the facts;

c. determine whether an underpayment has occurred.

When it is determined that an underpayment has occurred, the county department must take action to correct the payment. The two principal means of correction are

a. issue an additional warrant so that the payment and the authorization are in agreement;

b. issue a retroactive payment warrant when the authorization is incorrect.

(Emphasis added.)

## II.

Obert claims that the broad statutory language authorizing AFDC, the federal regulations interpreting the statute, and the federal statute's legislative history all compel the conclusion that AFDC recipients or applicants may seek review of the Colorado Department's mistaken termi-

there is no time limit for a retroactive payment if the payment is authorized as a result of an evidentiary hearing or appeal.
*The rules require prompt correction of an underpayment regardless of when the discovery of the error occurs.* The State Department of Social Services assigns an appeal number to authorize reimbursement of retroactive payments which exceed 90 day or 12 month limitations."
(Emphasis added.)

nation or denial of AFDC benefits at any time. We disagree.

The federal AFDC statutes require that the state plan must provide an opportunity for a fair hearing before the administering agency to any individual whose claim for AFDC is denied or not acted upon with reasonable promptness. 42 U.S.C. § 602(a)(4) (Supp.1988). Section 26–2–127, 11 C.R.S. (1982 & 1988 Supp.), parallels 42 U.S.C. § 602(a)(4) and grants an applicant or recipient the opportunity to appeal the Colorado Department's or County Department's decision to deny, suspend, terminate, or modify an AFDC award.

The HHS regulation addressing the fair hearing requirement states:

(a) *State plan requirements.* A state plan under title ... IV–A ... shall provide for a system of hearings under which:

(5) An opportunity for a hearing shall be granted to any applicant who requests a hearing because his or her claim for financial assistance ... is denied or is not acted upon with reasonable promptness, and to any recipient who is aggrieved by any agency action resulting in ... suspension, reduction, discontinuance, or termination of assistance ... [and]

(iii) The claimant shall be provided reasonable time, *not to exceed 90 days, in which to appeal an agency action.*

45 C.F.R. § 205.10 (1987) (emphasis added). The Colorado Department's regulations also require an aggrieved applicant or recipient to appeal an adverse action within ninety days. *See* 9 Code Colo.Reg. 2503–1, § 3.850.11 (1981).

■ The Colorado Department's time limits for the right to appeal an adverse AFDC decision conform to the federal statutes and regulations.[8] *See* 42 U.S.C. § 602; *Lukhard,* 107 S.Ct. at 1810; *Heckler,* 470 U.S. at 189, 105 S.Ct. at 1141. An aggrieved applicant or recipient loses the right to

appeal the denial, suspension, termination, or modification of AFDC benefits if notice of intent to appeal is not given within ninety days.

■ Here, Obert's AFDC benefits were terminated because of her failure to provide a copy of her son's social security card. Her reapplication for benefits was denied by the County Department because she was supported by her father. It is undisputed that Obert neglected to seek administrative review of the agency actions until well after the expiration of the ninety-day appeal period and nearly two years after the denial of her reapplication. The County Department's termination of Obert's benefits and the denial of her reapplication fall squarely within the actions governed by 45 C.F.R. § 205.10 (1987) and 9 Code Colo.Reg. 2503–1, § 3.850.11 (1981). The hearing officer properly concluded that he had no jurisdiction to consider the merits of Obert's appeal.

### III.

Obert argues that the federal and state statutes and regulations requiring correction of underpayment or overpayment of AFDC benefits mandate that she be granted the right to appeal her alleged "underpayment" regardless of the time limitations imposed by statute and regulations. Her argument challenges the County Department's initial award which was reduced seventy-four percent because her father provided her with room and board and focuses on 42 U.S.C. § 602(a)(22) (Supp.1988), which states in pertinent part: "A State plan ... must ... provide that the State agency will promptly take all necessary steps to correct any overpayment or underpayment of aid under the State plan."

■ The HHS regulations similarly require that a state plan must provide for specific uniform state policies for prompt

---

**8.** The federal and state AFDC legislative and regulatory requirements are to be construed together. Section 26–2–105, 11 C.R.S. (1982), states:

*Federal Requirements.* Nothing in this article shall be construed to prevent the state department from complying with federal require-

ments for public assistance programs expressly provided by law in order for the state of Colorado to qualify for federal funds under the social security act and to maintain said programs within the limits of available appropriations.

correction of underpayments. 45 C.F.R. 233.20(a)(13)(ii) (1987). The Colorado Department also allows for the prompt correction of underpayments in a similar regulation. 9 Code Colo.Reg. 2503–1, § 3.800.51 (1988). We agree with Obert's claim that neither the state nor federal regulations set forth a time limitation for the state to rectify underpayments.

Several courts have interpreted 42 U.S.C. § 602(a)(22) and 45 C.F.R. 233.20(a)(13) broadly to permit recovery of underpaid benefits long after the error was committed and discovered. *Tambe v. Bowan,* 839 F.2d 108 (2d Cir.1988), held that the intent of Congress was to permit completely unrestrictive and unlimited corrections of underpayments regardless of when they were discovered. *Id.* at 110. The court held that the intent of 42 U.S.C. § 602(a)(22) is to require agencies to make corrective payments regardless of a later change in the recipient's eligibility for aid. *Tambe,* 839 F.2d at 111. Similarly, *Edwards v. McMahon,* 834 F.2d 796 (9th Cir.1987), examined the plain language of 42 U.S.C. § 602(a)(22) to discern Congressional intent and stated:

> Section 602(a)(22) requires state agencies to "promptly take *all* necessary steps to correct *any* overpayment or underpayment of aid...." (Emphasis added). "All" means every. "Any" means without restriction or limitation. The plain meaning of the statute could not be broader. Congress intended all underpayments to be corrected.

*Edwards,* 834 F.2d 796, 799.

■ The statute was given a broad interpretation in *Cudal v. Sunn,* 742 P.2d 352 (Haw.1987), a case with facts somewhat similar to those in this case. Cudal and her daughter, who had been receiving AFDC payments and food stamps as a separate household, moved in with Cudal's parents. Cudal immediately notified the state department of her changed housing status but the department did not adjust her payments until four months later. The court held that "Congress set no time limit for recovery or adjustment of overpayments and underpayments" and concluded that despite the department's oversight, the department could reduce Cudal's AFDC benefits to correct the overpayment. Since the right to correct an overpayment is identical to the right to correct an underpayment pursuant to 42 U.S.C. § 602(a)(22), the cases which have addressed the time for correction of both underpayments and overpayments have declared that there is no time limitation. *Edwards; Ehrenstertfor v. Division of Pub. Welfare,* 196 N.J. Super. 405, 483 A.2d 212 (N.J.Super.Ct. App.Div.1984); *Burton v. Department of Social Servs.,* 103 Wis.2d 670, 309 N.W.2d 388 (Wis.Ct.App.1981). An underpayment of benefits must be corrected regardless of when the underpayment was discovered and brought to the attention of the County Department. To comply with the broad Congressional mandate for the correction of underpayments and overpayments, the Colorado Department has issued County Letter 84–349–A and 9 Code Colo.Reg. 2503–1, § 3.800.5 (1988). The County Letter provides an internal procedure for the correction of an underpayment regardless of when the discovery of the error occurs.

However, the County Letter is inconsistent, stating first that an underpayment must be corrected promptly regardless of when the underpayment is discovered, and then stating that '[i]f the time limit for a hearing has not expired up to (90 days from the mailing date of the prior notice for the payment in question), the client may request a hearing so that a decision regarding the alleged underpayment may be made.' A policy of the Colorado Department that provides for a time limit on Obert's right to seek correction of an underpayment violates state and federal law, and contradicts the holding of this case. *See* 42 U.S.C. § 602(a)(22); 45 C.F.R. 233.20(a)(13); *Edwards; Cudal; Ehrenstertfor; Burton.* Consistent with our holding, any provision of County Letter 84–349–A that deprives the state hearing officer of jurisdiction to rehear Obert's claim for an alleged underpayment of benefits is void and without legal effect.

Accordingly, we affirm the court of appeals on the right to appellate review regarding the termination and denial of Obert's benefits, and remand to the court

of appeals with directions to return the case to the district court for return to the state hearing officer for determination of whether there was an underpayment of benefits and, if so, for correction of any underpayment in accordance with County Letter 84–349–A and 9 Code Colo.Reg. 2503–1, § 3.800.5 (1988) (Correction of Underpayments).